# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DONELLA HARRIEL, individually
and on behalf of a class of all persons
and entities similarly situated,

    Plaintiffs,

Case No. 8:25-cv-01165-TPB-SPF

v.

BEALL'S, INC.,

    Defendant.

_____/

## **DEFENDANT BEALLS INC.'S MOTION TO DISMISS**

Defendant Bealls Inc. ("Bealls") respectfully moves to dismiss the Complaint [D.E. 1] ("Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff cannot state a claim under the Telephone Consumer Protection Act ("TCPA") for an alleged violation of the federal Do-Not-Call ("DNC") regulation, 47 C.F.R. § 64.1200(c)(2), because the regulation and statutory provision conferring a private right of action under 47 U.S.C. § 227(c)(5) apply only to "residential" phone numbers and residential phone subscribers, not cellular phone users.

## INTRODUCTION

Plaintiff Donella Harriel ("Plaintiff") purports to bring a putative class action over alleged SMS/MMS text messages sent to her phone number that she did not consent to receive. Compl. ¶¶ 17-21. The sole claim Plaintiff brings under the TCPA

is based on the allegation that she registered her number on the national DNC registry in 2024. *Id.* ¶ 18. Despite the conclusory allegation that her number is a "residential line," *id.* ¶ 20, the nature of her claim and supporting allegations—including screenshots of the alleged text messages on a smartphone—indicate that her number is a cellular line. Plaintiff cannot bring suit under 47 U.S.C. § 227(c) for alleged texts sent to her cell phone number because the statute, by its plain terms, applies to residential (not cellular) phone subscribers only.

While the FCC has interpreted Section 227(c) to include cell phone users, this Court is no longer required to treat as binding the FCC's interpretation—particularly where, as here, the FCC has overstepped its rulemaking authority. Ten days ago, the U.S. Supreme Court ruled, in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 600 U.S. ___, 2025 WL 1716136, at *4 (June 20, 2025), that the Hobbs Act no longer precludes district courts from reviewing the FCC's interpretations of the TCPA and that the Court may decide for itself whether the FCC's interpretation is correct, using ordinary tools of statutory interpretation.[1] As one Florida federal district court has already found, "a proper interpretation of the statute would

---

[1] In so holding, the Supreme Court abrogates prior Eleventh Circuit panel precedent, which required district courts to defer to FCC interpretations of the TCPA. *See, e.g., Gorss Motels, Inc. v. Safemark Sys.*, LP, 931 F.3d 1094, 1103 (11th Cir. 2019) ("In *Mais*, we interpreted the Hobbs Act's grant of exclusive jurisdiction to the courts of appeals as stripping district courts of any power to consider the validity of the Commission's orders—in facial, pre-enforcement challenges to an agency order and private civil enforcement actions in which a party contests the order." (citing *Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110 (11th Cir. 2014)).

conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c)" of the TCPA. *Turizo v. Subway Franchisee Ad. Fund Trust Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022). For the reasons that follow, the TCPA does not provide Plaintiff the relief she seeks, and her claims must be dismissed with prejudice.

## LEGAL STANDARD

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While factual allegations are accepted as true, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "[D]ismissal is appropriate where it is clear that the plaintiff can prove no set of facts in support of the claims in the complaint. For this reason, a court may dismiss a complaint pursuant to Rule 12(b)(6) on a dispositive issue of law." *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (internal citations and quotations omitted).

## ANALYSIS

### Plaintiff Cannot Bring Suit Under 47 U.S.C. § 227(c) because the Alleged Text Messages Were Not Calls Made to a "Residential Telephone"

Plaintiff seeks relief that is not available to her because the TCPA's DNC provision expressly applies to "residential telephone subscribers," not cellular phone users like herself. *See* 47 U.S.C. § 227(c).

3

As an initial matter, the nature of Plaintiff's claims and supporting factual allegations evidence that her telephone number is a cellular line. Compl. ¶¶ 20-24. Plaintiff's claims involve alleged SMS/MMS text messages, and the Complaint includes screenshots of such messages displayed on the interface of a smartphone device. *Id*. As discussed in greater detail below, both the U.S. Supreme Court and the Eleventh Circuit Court of Appeals have ruled that the TCPA distinguishes between "residential" and "cellular" phone lines in different provisions of the statute. Accordingly, the bare and unsupported allegations that Plaintiff's cell number was a "residential line"[2] for personal use—which the Court need not accept as true—is neither material nor sufficient to state a plausible claim for relief. *See, e.g.*, *Cunningham v. Caribbean Cruise Lines, Inc.*, No. 15-62580-CIV-MORENO, 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016) (finding "Plaintiff's assertion that a cellular phone can be converted into a residential phone unavailing"); <u>Morris v. Lincare, Inc.</u>, No. 8:22-CV-2048-CEH-AAS, 2023 WL 5336780, at *4 (M.D. Fla. Aug. 18, 2023) ("While Plaintiff alleges she uses her cell phone as a residential line, the statute and case law make clear they are not one in the same."); *Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018)

---

[2] The Complaint further fails to include any allegation suggesting that Plaintiff is a "subscriber" to a residential telephone service. *See* 47 U.S.C. § 227(c)(5) (authorizing the creation of the DNC Registry "to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations to which they object") (emphasis added).

4

("Plaintiff's characterization of the cell phone as a 'residential, cellular telephone line' is not determinative of this question. These are not factual allegations, but legal terms drawn from the operative statute. . . . Congress's structural choice to treat these different types of calls differently has been observed by abundant and uniform . . . authority.").

Plaintiff's sole claim under the TCPA is based on the allegation that she registered her cell phone number on the national DNC registry. Compl. ¶ 28. Section 227(c)(1) authorizes the creation of the DNC Registry "to protect *residential* telephone subscribers' privacy rights," 47 U.S.C. § 227(c)(1) (emphasis added), by creating a database of phone numbers of "*residential* subscribers who object to receiving telephone solicitations[.]" 47 U.S.C. § 227(c)(3) (emphasis added). Section 227(c)(2) further authorizes the FCC to "prescribe regulations to implement methods and procedures for protecting the privacy rights described in" section 227(c)(1) as it pertains to "residential telephone subscribers" only. 47 U.S.C. § 227(c)(2). In addition, section 227(c)(5) establishes a private right of action to anyone "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5). Plaintiff further bases her claim on 47 C.F.R. § 64.1200(c)(2), which provides that no one shall initiate a telephone solicitation to a "*residential* telephone subscriber who has registered his or her

5

telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2) (emphasis added). But neither section 227(c), nor the regulation under section 64.1200(c)(2), apply to text messages sent to cell phone numbers.[3]

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning" by referring "to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997). The "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* at 340; *see also United States v. Silva*, 443 F.3d 795, 797–98 (11th Cir. 2006) ("The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry.") (internal citations omitted). This case presents "a straightforward issue of statutory interpretation," as sections 227(c) and 64.1200(c) unambiguously apply to *residential* lines, not cell phone lines. *Turizo*, 603 F. Supp.

---

[3] Instead, calls to *cellular* phone numbers are governed by a different provision of the TCPA that restricts the use of automated calls. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting calls made using an automatic telephone dialing system ("autodialer") or an artificial or prerecorded voice to phone numbers assigned to a "cellular telephone service"). Plaintiff does not assert a claim under 47 U.S.C. § 227(b) following the U.S. Supreme Court's recent decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), construing *autodialer* to **exclude** systems that merely dial phone numbers stored in a database, and holding "Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator" (which plaintiff does not allege). *Id.* at 1170-72 (rejecting a broad interpretation of autodialer in view of the "narrow statutory design").

6

3d at 1340.

The limited scope of section 227(c) is evidenced by the statutory framework and text. Both the Supreme Court and the Eleventh Circuit have ruled that the TCPA distinguishes between "residential" and "cellular" phone lines in different provisions of the statute. The terms are not used interchangeably. This is made obvious by the presence of separate provisions that restrict calls made using "an artificial or prerecorded voice" to *cellular* phone lines in 47 U.S.C. § 227(b)(1)(A)(iii) and to *residential telephone lines* in § 227(b)(1)(B). In *Duguid*, the Supreme Court explained that the TCPA "separately prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones," making clear that the TCPA treats *residential* phone lines as distinct from *cellular* phone lines. 141 S. Ct. at 1172. The Eleventh Circuit also found that the TCPA draws a distinction between calls to residential phone lines and those to cellular numbers. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) (distinguishing calls made to a "residential telephone line" under 47 U.S.C. § 227(b)(1)(B) from calls made to a "cell-phone number," which concerned § 227(b)(1)(A)(iii)); *see also Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) (affirming district court ruling that explained that "practical realities support a distinction between residential and cellular lines"). The TCPA's distinction between residential and cellular phone lines has been recognized by other

courts within the Eleventh Circuit.[4] The Third Circuit Court of Appeals has likewise construed residential lines under the TCPA to refer to "land-lines" and not cellular lines. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013) (holding that certain exemptions "that apply exclusively to residential lines" do not apply to calls made to cellular phones).

Plaintiff cannot state a claim under 47 U.S.C. § 227(c) for alleged text messages sent to her cellular phone number because both the TCPA and the implementing regulation under 47 C.F.R. § 64.1200(c) expressly restrict calls made to a *residential telephone subscriber*, not calls to a cellular phone subscriber. The omission was deliberate in light of the TCPA's textual distinction between residential and cellular phones. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("A familiar principle of statutory construction ... is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."), *superseded by statute on other grounds*, Pub. L. No. 109-366, § 7, 120 Stat. 2600, 2635-36 (2006) (amending 28 U.S.C. § 2241); *Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here

---

[4] *See also Cunningham*, 2016 WL 7494871, at *2 ("While Plaintiff argues that his cellular phone serves as both a mobile and residential line, the Eleventh Circuit distinguishes residential land line telephone numbers from cell-phone numbers."); *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1320-21 (S.D. Fla. 2012) ("the TCPA's residential calls prohibition is contained within a separate subsection from the cellular calls prohibition," *comparing* 47 U.S.C. § 227(b)(1)(A)(iii) *with* § 227(b)(1)(B), where "[t]he different provisions also provide different exemptions"), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'"). Plaintiff's bare assertion that her cell phone number is a residential line, Compl. ¶ 20, is therefore not determinative or material because the statutory scheme and text plainly distinguishes cellular calls from residential calls. *See, e.g.*, *Morris*, 2023 WL 5336780, at *4 ("[C]ourts use 'home phone' and 'residential telephone' to refer to the TCPA's language 'residential telephone line.' While these terms are used by courts interchangeably, they are distinct from cell phones.") (citing *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2345 n.3 (2020)); *Cunningham*, 2016 WL 7494871, at *2; *Morgan*, 2018 WL 3580775, at *2.

While there is no controlling Eleventh Circuit case specifically deciding whether 47 U.S.C. § 227(c) applies to cell phone numbers, several courts, including at least one Florida federal district court, have held that it *does not* based on the clear language of the statute.[5] In *Turizo*, the court ruled that "a proper interpretation of the

---

[5] *See, e.g.*, *Cunningham v. Creative Edge Mktg. LLC*, No. 4:19-CV-00669, 2021 WL 2792353, at *4 (E.D. Tex. June 16, 2021) (ruling that "Plaintiff has not provided a sufficient basis to proceed on his claim under § 227(c)(5) of the TCPA and 47 C.F.R. § 64.1200(d)" which applies "to a residential telephone subscriber" and "does not encompass [p]laintiff's cell phone"), *R&R adopted*, No. 4:19-CV-669, 2021 WL 3048400 (E.D. Tex. July 20, 2021); *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) (concluding, without deciding the issue, that "the plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere. Furthermore, the TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(l)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a

9

statute would conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c)[,] . . . and the protections offered to numbers on the DNC Registry would not apply to cellular telephone numbers." 603 F. Supp. 3d at 1340 (cleaned up).

More recently, in *Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023), the court ruled that the plaintiff could not allege a violation of the DNC provision for calls to plaintiff's cell phone because "[t]he structure and language of the TCPA controvert coverage of cell phones" under section 227(c). *Id.* at *3 (citing *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) and finding that "[t]he Eleventh Circuit noted the distinctions between a cell phone and residential phone" under the TCPA). Based on "the clear text of the TCPA," *Gaker* found that "[t]he FCC's rulemaking authority under section 227(c) extends only to unwanted telephone solicitations directed at 'residential telephone subscribers.'" *Id.* The court therefore agreed with defendants that "Section 227(c) of the TCPA and the corresponding regulations . . . appl[y] only to residential

---

residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d) . . . The Court, therefore, is not convinced that Congress and the FCC, through the TCPA and its regulations, intended to protect 'cellular telephone subscribers' along with 'residential telephone subscribers.'"); *Cunningham v. Spectrum Tax Relief, LLC*, No. 3:16-2283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017) (ruling, based on the "plain language" of the TCPA regulation, that plaintiff cannot state a claim because "[t]he private right of action created by 47 U.S.C. § 227(c)(5) is . . . limited to redress for violations of the regulations that concern residential telephone subscribers," and plaintiff alleges only calls to his cell phone), *R&R adopted*, 2017 WL 3220411, at *1 (July 28, 2017).

10

telephones and based upon the statutory language and structure, does not extend to cell phones." *Id.* at *2-3 (concluding that "the authority rests with Congress to amend the TCPA and bring cell phones within its protections").

The reasoning in *Gaker* is consistent with the Eleventh Circuit's statutory analysis set forth in *Osorio*. There, the Court of Appeals concluded that the FCC-created exemption for calls based on an established business relationship was promulgated under the TCPA's section 227(b)(2)(B) (which "permits the FCC 'by rule or order, [to] exempt [certain categories of calls] from the requirements of paragraph (1)(B) of this subsection [*i.e.*, 47 U.S.C. § 227(b)(1)(B)]'" prohibiting autodialed calls to "any residential telephone line"), but the same exemption did not apply to calls to cell phone numbers under § 227(b)(1)(A)(iii) because "47 U.S.C. § 227(b)(2)(B) does not authorize rulemaking with regard to 47 U.S.C. § 227(b)(1)(A)(iii)." *Osorio*, 746 F.3d at 1250 (brackets in original). The Eleventh Circuit therefore recognized that the TCPA granted limited rulemaking authority with respect to *residential* phone lines (and not cellular phone lines). That carve-out is found not only in section 227(b) but also section 227(c) – again, underscoring that Congress sought to regulate calls to cell phones differently from calls to residential lines, as evidenced by the statutory structure. *See* 47 U.S.C. § 227(c)(1) & (c)(2). Applying the same straightforward reading of the statute as instructed by *Osorio*, a cell phone user cannot assert a claim pursuant to section 227(c) because the DNC

11

provision of the TCPA by its plain terms apply exclusively to residential telephone subscribers.

Though other courts (before *McKesson*) have ruled that cell phones may be treated as residential phones,[6] those cases do not adequately address the clear limitations of section 227(c) or the statutory distinction between residential and cellular phone lines. Those cases also rely instead on a separate rule created by the FCC purporting to expand the regulations applying to "residential telephone" lines to "wireless" numbers. *See* 47 C.F.R. § 64.1200(e) (providing that the rules under section 64.1200(c) and (d) are applicable to "calls to wireless telephone numbers" in accordance with the FCC's Report and Order, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd. 14014 (July 3, 2003) (the "2003 FCC Order")). But invoking the FCC's rule under section 64.1200(e) to assert a private right of action would exceed the scope of section 227(c).

As explained above, Congress did not authorize the FCC to prescribe regulations under section 227(c) for wireless or cellular subscribers and instead explicitly instructed the agency to establish "a single national database to compile a

---

[6] *See, e.g.*, *Spinelli v. Storm Tight Windows*, No. 8-62592-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 27573, at *10-11 (S.D. Fla. Feb. 21, 2019) (ruling, without deciding the issue of whether the plain terms of 47 U.S.C. § 227(c) excludes calls made to cell phone numbers, that plaintiffs whose cell phone numbers were listed on the DNC had stated a claim under § 227(c)(5)).

list of telephone numbers of *residential subscribers* . . . ." See 47 U.S.C. § 227(c)(3) (italics added). This limitation is reflected in the implementing regulation under section 64.1200(c) which applies to only "residential telephone subscriber[s]," and does not refer to wireless or cellular subscribers. By contrast, section 64.1200(e) is not based on the express provisions of section 227(c), but rather on a broad reading of legislative intent – inconsistent with the plain terms of the statute – as the FCC explained in the 2003 FCC Order.[7] The FCC expressly relied on the autodialer provision under section 227(b) (*not* the DNC provision) of the TCPA to conclude that "the national database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA." 2003 FCC Order ¶ 33 (citing 47 U.S.C. § 227(b)(1)(iii) in concluding that "Congress has indicated its intent to provide significant protections under the TCPA to wireless uses").

While the FCC may require telemarketers to comply with the DNC regulations for residential and wireless subscribers alike, Congress only created a cause of action for *residential* telephone subscribers where section 227(c)(5) expressly limits the private right of action to a "violation of the regulations

---

[7] As observed by the Eleventh Circuit, the 2003 FCC Order sought to expand the TCPA's coverage beyond the statute's plain terms based on a "broad 'reading of the legislative history'" that was rejected by the Court of Appeals. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1308-9 (11th Cir. 2020) (adopting a narrower interpretation of the autodialer provision based on the language of the statute and not the FCC order).

prescribed under this subsection" (not the autodialer provision cited in the 2003 FCC Order) to "protect residential telephone subscribers' privacy rights" – distinct from cell phone users. *See* 47 U.S.C. § 227(c)(1) & (c)(5). Extending liability under section 227(c) to include calls made to "wireless" phone numbers listed on the DNC registry would deviate from the clear language of the statute and exceed the authority granted to the FCC by Congress.[8] In *Turizo*, the court concluded that "when Congress granted the FCC authority to create the DNC Registry via section 227(c)(3), Congress intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers. Consequently, the protections offered to numbers on the DNC Registry . . . would not apply to cellular telephone numbers . . .". 603 F. Supp. 3d at 1340. Yet, "without any congressional grant of authority," the *Turizo* court observed that the FCC improperly expanded Section 227(c)(5)'s private right of action to cellular telephone subscribers in the 2003 FCC

---

[8] *See, e.g.*, *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022) ("Agencies have only those powers given to them by Congress, and enabling legislation is generally not an open book to which the agency may add pages and change the plot line." (citations omitted)); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472 (1977) ("The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law," but rather "to carry into effect the will of Congress as expressed by the statute." (internal quotations and citations omitted)); *FTC v. Hornbeam Special Situations, LLC*, No. 1:17-cv-3094-TCB, 2018 U.S. Dist. LEXIS 204340, at *17-18 (N.D. Ga. Oct. 15, 2018) (stating that the Court is "aware of the need to carefully scrutinize an agency's suggested interpretations of its mandates and which have the effect of expanding its authority beyond the statutory bounds. If an agency was meant to have authority to do such and such a thing, Congress must say so. And when it has said, 'Thus far and no farther,' it is the Court's responsibility to blow the whistle and call the out of bounds.").

Order. *Id.* at 1341 ("[T]he FCC's assumptions as to congressional intent should not suffice to create an entirely new private right of action for cellular telephone subscribers.").

While the district court in *Turizo* ruled that it could not invalidate the 2003 FCC Order based on the Hobbs Act, the Supreme Court's recent decision in *McKesson* has removed that constraint, ruling that the "Hobbs Act does not preclude district courts . . . from independently assessing whether an agency's interpretation of [the TCPA] is correct." 600 U.S. ___, 2025 WL 1716136, at *4, 6 (citing *Loper Bright Enters.* v. *Raimondo*, 603 U. S. 369, 402 (2024)). District courts are now instructed to "interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* at *4.

Even if Plaintiff alleged a violation of the 2003 FCC Order, the rule codified at 47 C.F.R. § 64.1200(e) does not create a claim under 47 U.S.C. § 227(c)(5). "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (cleaned up). Thus, "a regulation may invoke a private right of action that Congress

15

through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001); *see also Touche Ross*, 442 U.S. at 577 n.18 ("[T]he language of the statute and not the rules must control.").

Here, even if it were within the FCC's prerogative to prescribe the regulation under 47 C.F.R. § 64.1200(e) and restrict calls to cell phone numbers on the DNC registry, it does not follow that cell phone users can bring suit under 47 U.S.C. § 227(c)(5) which creates a private right of action for residential telephone subscribers only. As the Eleventh Circuit has ruled, "[t]he fact that Congress has expressly provided private litigants with one right of action . . . powerfully suggests that Congress did not intend to provide other private rights of action." *Love v. Delta Air Lines*, 310 F.3d 1347, 1357 (11th Cir. 2002) (holding that based on "the text and structure" of the Air Carrier Access Act, Congress did not create a private right of action to vindicate the statute's prohibition against disability-based discrimination by air carriers); *see also In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc) ("In the two decades since *Sandoval* was decided, we have faithfully heeded the Supreme Court's directives and have demanded clear evidence of congressional intent as a prerequisite to a private right of action.") (citing Eleventh Circuit decisions holding that Congress did not create a private right of action).

Thus, while the FCC sought to broaden the DNC regulations to apply to cell phone numbers under 47 C.F.R. § 64.1200(e), the private remedy under 47 U.S.C. §

16

227(c)(5) is not available to cell phone users. Because section 227(c) by its plain terms applies only to calls made to a residential phone line, not cellular or wireless lines, Plaintiff does not and cannot allege a cause of action under section 227(c) based on alleged texts sent to her cell phone number.

## CONCLUSION

For all of the foregoing reasons, Bealls respectfully requests that the Court dismiss the Complaint with prejudice.

## **Local Rule 3.01(g) Certification**

Pursuant to Local Rule 3.01(g), undersigned counsel has conferred with opposing counsel by e-mail on June 27, 2025, in a good faith effort to resolve the issues raised in the Motion. Plaintiff opposes the relief requested herein.

Dated: June 30, 2025    Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
*Attorneys for Defendant Bealls Inc.*
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0816
Facsimile:  (305) 579-0717

By:   *Mark A. Salky*
   MARK A. SALKY
   Florida Bar No. 058221
   MARIA R. SANTANGELO
   Florida Bar No. 1049930
   Email:  mark.salky@gtlaw.com
       karen.burke@gtlaw.com
       maria.santangelo@gtlaw.com
       MiaLitDock@gtlaw.com

17

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 30th day of June, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: *Mark A. Salky*
MARK A. SALKY